FILED

MAR 2 8 2019

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| YOLANDA SALDIVAR | § | |
| Petitioner | § | |
| | § | |
| v. | § | Cause No.: **W19CA231** |
| | § | |
| WILLIAM STEPHENS | § | |
| Texas Department | § | |
| of Criminal Justice | § | |
| Director ("TDCJ") | § | |

## MOTION FOR THE AUTHORIZATION TO FILE A SECOND OR SUCCESSIVE 2254 FEDERAL WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY

Now comes, Petitioner Yolanda Saldivar #733126, who is incarcerated in the Texas Department of Criminal Justice Correctional Institutional Division at the Mountain View Unit in Gatesville, Texas, and presents a Prima Facie case to this Honorable Court for the authorization to file a second or successive 2254 Federal Writ of Habeas Corpus and Certificate of Appealability. **In re Epps**, 127 F.3d 364 (5th cir. 1997)

### PROCEDURAL HISTORY

The Petitioner was charged, indicted and convicted of First Degree Murder and sentenced to life in prison. Motion for a New Trial was filed and denied. After Notice of Appeal, the Petitioner filed a Direct Appeal to the 14th Court of Appeals,

No.14-96-10-CR.  On October, 1998 the conviction and sentenced was affirmed.  On March, 1999, a Petition for Discretionary Review was filed and denied on September, 1999.  On September 26, 2000, the Petitioner's attorney filed an **ORIGINAL** State Writ of Habeas Corpus in the **WRONG CONVICTING COURT**.  Due to a change of venue from the 214th to the 228th District Court, the Writ should have been filed in Houston and not in Corpus Christi. On December, 2000, the Writ was dismissed by the convicting court.  The Statute of Limitations to file a Federal Writ had expired.

## LEGAL AND FACTUAL CLAIM

The Petitioner files this action as a Federal Habeas Corpus pursuant to 28 U.S.C. §2254.  The District Court for the Western District, Waco Division has jurisdiction over the filing of this petition pursuant to §2244(b)(3)(A).  28 U.S.C.§2244(b)(2)(B) (i)(ii) provides the avenue for the Petitioner claiming that the "...factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found applicant guilty of the underlying offense".  The Petitioner argues and claims, as she will show, that the prosecutor in this instant case, Mr. Carlos Valdez, had and has held **EXCULPATORY MATERIAL EVIDENCE** without disclosing it to the defense or the jury during the trial until now **AFTER 23 YEARS**, when he presented that very evidence

to the public in an spanish media interview using deceptive verbiage of the facts contrary to his affirmative duty and responsibilities as a prosecutor and District Attorney.

## PRIMA FACIE CASE

The Fourteenth Court of Appeals stated the following in its "OPINION" in **SALDIVAR V. STATE**, 980 S.W. 2d 475:

> "...Appellant shot Complainant, Selena Quintanilla Perez, in the back [AS COMPLAINANT WALKED TOWARD THE DOOR OF APPELLANT'S ROOM] at the Corpus Chrisiti Inn. Complainant "**RAN**" from the room toward the lobby of the motel, screaming. Appellant "**FOLLOWED**" her in armed pursuit..."

The Court further ruled in the Appellant's point of view contending the prosecutor in **SALDIVAR** "**WITHHELD EVIDENCE**" from the Appellant:

> "The record reflects the prosecutor did not deliberately withheld impeachment evidence from Appellant. Yet, the record also reflects the State made little effort to discover the information which "**IT POSSESSED IN ITS OWN RECORDS**". Therefore, we find the State breached its affirmative duty to disclose impeachment evidence to which "**APPELLANT WAS ENTITLED**" **Id**. at 486.

The criminal element of the Texas Penal Code §19.02 First Degree Murder require a person "**INTENTIONALLY OR KNOWINGLY**" causes the death of an individual. Vernon's Ann Texas Code of Criminal Procedure ("TCCP") Article 38.03 states that "All persons are presumed to be innocent and no person may be convicted of an offense unless [**EACH ELEMENT OF THE OFFENSE**] is proved beyond a reasonable doubt". ("TCCP" Art. 11.43) The Court of Appeals stated that the Complainant "**RAN**" and that the Appellant "**FOLLOWED**" her. These two physical actions by both the Complainant and the Petitioner clearly points to the [**REQUIRED ELEMENT**] of the Penal Code §19.02 of "**INTENT**" to do harm to the

victim by the Petitioner. Therefore, every item and piece of **EXCULPATORY MATERIAL EVIDENCE** (i.e. clothing) that contributes to these very facts (**"RAN, FOLLOWED"**) that would justify the conviction and sentence of an accused, must and should be made available to the defense and **MORE IMPORTANTLY TO THE JURY** who is the **TRIER OF FACT** in this instant case. "TCCP" Art. 38.04.

GROUND ONE:

PROSECUTOR VIOLATED PETITIONER'S DUE PROCESS CLAUSE<br>OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES<br>CONSTITUTION BY WITHHOLDING FAVORABLE<br>"EXCULPATORY MATERIAL EVIDENCE"

Petitioner argues in her Ground for relief that the State's prosecutor has willfully withheld evidence favorable and crucial for her defense. The Court of Appeals ruled in **SALDIVAR V. STATE**, 980 S.W. 2d 475 that the prosecutor breached its affirmative duty to disclose **"IMPEACHMENT"** evidence that the **"PETITIONER WAS ENTITLED TO"**, but concluded this evidence was **"IMMATERIAL"**. Impeachment evidence is to discredit a person's honor or wrongdoing. In contrast, exculpatory evidence on the other hand, directs to the guilt or innocence of an accused. Therefore, it stands to reason, then, that **"TANGIBLE MATERIAL EVIDENCE"** should fall under the premise in **SALDIVAR** that supports the contributing facts of **"RAN AND FOLLOWED"** as **"MATERIAL"** in contrast to the ruling by the Court of Appeals that impeachment was **"IMMATERIAL"**.

The Petitioner presents to this Honorable Court that such **EXCULPATORY MATERIAL EVIDENCE** was willfully withheld in addition

-4-

to the **IMPEACHMENT EVIDENCE**:

During the trial, the State introduced **122 EXHIBITS** (**Doc – INDEX OF STATE'S EXHIBITS, xxvii–xxxii S-1-122, VOLUME XXIV, page 3518-3519**) In State Exhibits 12 and 12A, the following was introduced:

State Exhibit 12      Brown Bag w/Bra/Pns

State Exhibit 12A     Green Sweat Pants

Dr. Lloyd White, who performed the autopsy on the victim, indicated in his autopsy report that he made repeated requests to obtain the victim's upper clothing (i.e. Green Sweat Shirt) for his examination. (**Doc – INDEX OF STATE'S EXHIBITS, xxxii S-106-110, VOLUME XXVI, page 3622-3625**) This shirt was **NOT** provided to Dr. White. During the trial, a hospital orderly testified that he was ordered to incenerate this green sweat shirt. (**Doc – x-xi, VOLUME XVII, page 2617-2720**) **NO WHERE** in the State's Exhibit Index identifies a pair of "**WHITE HIGH TOP REEBOK TENNIS SHOES**" and/or a "**BLACK BASEBALL CAP**" introduced as evidence to the jury. The Petitioner asserts that when she was arrested and booked into the Nueces County Jail, she was stripped searched and her clothing (i.e. Shirt, Pants, socks, and a pair of **ANKLE HIGH BEIGE BOOTS**) were confiscated from her and not returned back. When the Petitioner was being interrogated at the police station, a female officer took pictures of the Petitioner's sustained injuries in the interrogating room. (**Doc – INDEX OF STATE'S EXHIBITS xxix S-41-43, VOLUME XXVI, page 3555-3557 and INDEX OF DEFENDANT'S EXHIBITS xxxiii D-11-14, VOLUME XXVII, page 3649-3652**) Those photos show the clothing

## GROUND TWO:

**PROSECUTOR ABRIDGED PETITIONER'S CONSTITUTIONAL**

**RIGHT BY SUBVERTING HER EQUAL PROTECTION OF THE LAWS**

The United States Constitution guarantees a fair trial through the Due Process Clause and defines the basic elements of a fair trial largely through the several provisions of the Fourteenth Amendment including "...nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws". The Petitioner has never made a conscious and intentional waiver of her constitutional rights asserted in her Fourteenth Amendment claim derived from the Sixth Amendment right. (**Texas Constitutional Bill of Rights Article I §10**).

Provisions of the Fourteenth Amendment, the "TCCP" Article 38.03 and the Texas Penal Code Ann §2.01 states that a conviction requires showing beyond a reasonable doubt that a defendant committed [**each element**] of an allege offense entitled defendant to a reversal of his conviction pursuant to Texas Penal Code Ann §39.04(a).

A prosecutor has an "**AFFIRMATIVE DUTY**" to disclose "**ALL MATERIAL**", exculpatory evidence to the defense. "TCCP" Article 38.36, 39.14; See **Lagrone v. State**, 942 S.W. 2d 602, 615 (Tex. Crim.App.) cert. denied 139 L.Ed.2d 235, 188 S.Ct. 305(1997). A Prosecutor violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution when he or she fails to disclose material evidence that is favorable to the accused.

See <u>Thomas v. State</u>, 841 S.W. 2d 399, 404 (Tex.Crim.App. 1992)
Favorable evidence is any evidence, including exculpatory and
impeachment evidence, that, if disclosed and used effectively
[<u>MAY</u>] make the difference between conviction and acquittal.
<u>Id</u>. Evidence is material if it creates a probability
sufficient to undermine the confidence in the outcome of the
proceeding. <u>Id</u>.

Mr. Valdez, representing the State and prosecutor against
<u>SALDIVAR</u> (Petitioner), had this <u>EXCULPATORY MATERIAL EVIDENCE</u>
in its possession prior and during the trial which he <u>DENIED</u>
<u>AND KEPT FROM THE JURY</u>. It is until <u>AFTER THESE 23 YEARS</u> that
he reveals this evidence. He had the "<u>AFFIRMATIVE DUTY</u>" to
disclose this <u>MATERIAL</u> exculpatory evidence. When the Court
of Appeals ruled in <u>SALDIVAR V. STATE</u>, 980 S.W. 2d 475 that the
prosecutor "<u>DID NOT DELIBERATELY</u>" withheld impeachment evidence
but "<u>MADE LITTLE EFFORT TO DISCOVER THE INFORMATION</u>" which it
"<u>POSSESSED IN ITS OWN RECORDS</u>" and "<u>BREACHED ITS DUTY TO DISCLOSE</u>
<u>IMPEACHMENT EVIDENCE TO WHICH APPELLANT WAS ENTITLED TO</u>", it
can then be fairly said that Mr. Valdez had and has <u>DELIBERATELY</u>
and willfully withheld these <u>EXCULPATORY MATERIAL EVIDENCE</u> (i.e.
tennis shoes and baseball cap) which <u>HE POSSESSED</u> and made <u>NO</u>
<u>EFFORT TO REVEAL</u> them to the defense and/or the jury who was
the trier of fact during the trial.

The Petitioner argues that if Mr. Valdez had disclosed to
the jury these exculpatory material evidence during the trial,
the defense could have [<u>EFFECTIVELY</u>] argued:

(1) that the prosecutor was introducing false evidence

as those tennis shoes did not belonged to the
defendant. ("TCCP" Art. 38.36; Texas Penal Code
§37.09);

(2) that the State's witnesses who testified that the
Petitioner "**RAN**" after the victim would have been
impeached. (U.S. Const. Amend. VI);

(3) that reasonable doubt exist and would have been
raised further by the defense to the jury. ("TCCP"
Art. 38.03);

(4) that the State **HAD NOT** successfully proven the element
of "**INTENT**" as required by the Texas Penal Code §19.02;

(5) that absent "**INTENT**", the lesser included offense would
and could have been charged and entertained by the
jury as the defense argued that this was an accident.
("TCCP" Art. 2.022, 38.04);

(6) that the "TENNIS SHOES" be examined and tested for
blood, grass, gravel, etc. to justify the allegation
that the victim "**RAN**" and the defendant "**FOLLOWED**"
her. ("TCCP" Art. 38.35);

(7) that the tennis shoes belonging to the victim had to
be among her other belongings especially the upper
clothing (i.e. green sweat shirt) crucial for the
medical examiner's examination. If the prosecutor
had the shoes in his possession, the likelihood that
he also had and has the upper clothing of the victim
is a real possibility. ("TCCP" Art. 38.36);

(8) that since the upper clothing of the victim was missing
but "**NOT THE TENNIS SHOES**", the defense would have
filed a Motion to have the State present those
responsible for the **CHAIN OF CUSTODY** of all the evidence
in the State's possession. ("TCCP" Art. 38.42);

(9) that it would file a Motion for Discovery to the Nueces
County Jail personnel to produce the confiscated
clothing of the Petitioner. ("TCCP" Art. 39.14);

(10) that the defense would have discredited the prosecutor
who was practicing prosecutorial misconduct by
introducing false evidence. ("TCCP" Art. 2.01, 2.03,
and 3.04); and/or

(11) that the defense be granted a Motion to instruct and
charge the jury by the Judge to consider a Sudden
Passion or a lesser included offense charge. ("TCCP"
Art. 38.04).

"TCCP" Art. 39.14 provides a limited discovery, **INDEPENDENT**
of the **CONSTITUTIONAL RIGHT** of access to exculpatory evidence.
In all prosecutions for murder, the State or the defendant shall
be permitted to offer testimony as to [**ALL RELEVANT FACTS**] and
circumstances surrounding the killing and the previous

relationship existing between the accused and the deceased, together with [**ALL RELEVANT FACTS**] and circumstances going to show the condition of the mind of the accused at the time of the offense. "TCCP" Art. 38.36. The Petitioner had the constitutional right to [ALL] and [ANY] exculpatory material evidence and the prosecutor denied the Petitioner this right by withholding not only impeachment evidence but now this newly discovered exculpatory material evidence of the victim's shoes and cap, that were in the prosecutor's possession and then using deceptive representation of the shoes to the media and the public **BUT NOT THE JURY**. The Petitioner was not allowed or permitted to offer testimony on this relevant fact.

Federal Rule of Evidence Rule 401 on Relevant Evidence "is evidence having any tendency to make [**EXISTENCE OF ANY FACT**] that is of consequence to the [**DETERMINATION**] of the action more probable or less probable than it would be without the evidence". Certainly, the shoes that the prosecutor willfully withheld is of consequence to the alleged FACT that either the victim "**RAN**" and/or the Petitioner "**FOLLOWED**". The Petitioner alleges that the prosecutor, Mr. Valdez purposefully misled the defense, the jury, the public and the rule of law he swore to uphold by deliberately withholding this critical exculpatory evidence.

The Petitioner paraphrases Mr. Valdez's media interview where he stated that he and the defense counsel, the late Mr. Douglas Tinker, discussed what [EVIDENCE] would or would not be introduced to the jury. How could this be? It is the jury, no less, that would decide the fate of the Petitioner, between

-10-

[**LIFE**] in prison and [**FREEDOM**]. The jury, **NOT** the defense or the prosecutor is the trier of fact of all relevant material evidence and they alone should and **DID** determine between conviction and acquittal. ("TCCP" Art. 38.04). If the shoes and blood stains upon them would further prove the allege crime and would ensure the successful prosecution of the defendant, why the exclusion of this exculpatory material evidence? Unless there was a nefarious attempt to obscure a verdict against the Petitioner. In **SLACK v. McDANIEL**, 529 U.S. 473, 146 L.Ed.2d 542, 120 S.Ct. 1595, the Court reasoned that "[A] Petitioner makes a 'substantial showing' when he demonstrates that his petition involves issues which are '**DEBATABLE AMONG JURISTS OF REASON**', that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further". 28 U.S.C. §2253(c)(2). The prosecutor fails to implement the rule of law when he [**DELIBERATELY**] violates the constitutional rights of an accused by withholding evidence that is favorable and could make a difference between conviction and acquittal. Historic ruling in **BRADY v. MARYLAND**, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963) require the disclosure of exculpatory and impeachment evidence. The prosecutor has the legal, constitutional and ethical duty to disclose **BRADY** material.

To be entitled to a new trial based on newly discovered evidence, Petitioner must show there is, in fact, new evidence, both competent and material to the case, the existence of which was "**UNKNOWN TO PETITIONER AT THE TIME OF TRIAL**". **JONES V.**

**STATE**, 711 S.W. 2d 35, 38 (Tex.Crim.App. 1986); **SALDIVAR V.**
**STATE**, 980 S.W. 2d 475. Second, Petitioner must show her
failure to discover such evidence before trial, or utilize
the evidence, once discovered, at the time of trial, was
not a result of any lack of diligence on her part. **Id.** "TCCP"
Art. 40.001. There is no doubt that the newly discovered
evidence is [COMPETENT] and [MATERIAL] as the prosecutor, Mr.
Valdez made it RELEVANT, COMPETENT, and MATERIAL to the case
through his media interview in 2018 and not before or during
the trial. Otherwise, why make the material evidence public
when he had successfully prosecuted the Petitioner [UNLESS]
his affirmative duty to the rule of law and upholding justice
for the truth was overshadowed by his egotistical nature of his
accomplishment? There was no failure of due diligence by the
Petitioner as she had no knowledge that such material evidence
existed until the prosecutor's media interview. The Petitioner
has the right to be tried by a jury of her peers providing her
with an inestimable safeguard against the corrupt or over
zealous prosecutor, Mr. Carlos Valdez, who knew, in this instant
case, that the case was **EXTREMELY HIGH PROFILE** and nothing short
of a sure conviction was expected as the **GENERAL PUBLIC** as a
whole demanded justice. The Petitioner many months before the
trial was convicted by **PUBLIC OPINION** as there was tremendous
outcry that the Petitioner be found guilty, nothing less. There
was no reason to withhold material evidence if Mr. Valdez's
prosecutorial case was strong as the Court of Appeals so ruled
and was factually sound with the backing of the public and an

-12-

unsequestered jury. ("TCCP" Art. 2.01 Duties of a District
Attorney, Art. 2.03 Neglect of Duty, Art. 3.04 Official
Misconduct).

The Petitioner further argues that the prosecutor was
practicing injustice and disregard for the rule of law against
Texas Law in Penal Code §37.09(a)(1)(2) Tampering with or
fabricating physical evidence which clearly states that a "person
commits an offense if...he alters, destroys, or conceals any
record, document, or thing with intent to [IMPAIR ITS VERITY],
legibility, or [AVAILABILITY] as evidence in the investigation
of official proceeding; or makes, [PRESENTS], or uses any record,
document, or [THING WITH KNOWLEDGE OF ITS FALSITY AND WITH INTENT
TO AFFECT THE COURSE OR OUTCOME OF THE INVESTIGATION] of official
proceeding". There is no doubt that Mr. Valdez:

    (a)   impaired the verity of the evidence by not only
            withholding the evidence, but claiming that those
            tennis shoes belonged to the defendant, inciting
            and infecting the public's sediment even more
            against the Petitioner before, during and now with
            his recent media interview;
    (b)   did not made the evidence available to the jury at
            the time of trial or official proceeding [WHERE IT
            MATTERED THE MOST WHERE THE DEFENDANT'S LIFE AND
            FREEDOM WERE AT STAKE]; and
    (c)   knew those tennis shoes belonged to the victim and
            withholding them helped get the conviction of the
            Petitioner practicing a travesty of justice to the
            rule of law and violating the constitutional rights
            of the Petitioner.

Given the nature that the prosecutor in **SALDIVAR** emphatically
presents new evidence to the media and the public POST-CONVICTION
23 years later, evidence not introduced prior or during the
trial, there is a reasonable probability that an [**EFFECTIVE
DEFENSE**] would have been successful had this new exculpatory

material evidence been introduced at trial and that a jury
confronted with such mitigating evidence would have returned
with a different verdict, at least [**ONE JUROR**] would have struck
a different balance.

The Petitioner surmises that Mr. Valdez may claim that his
media interview in March, 2018, should not play into any
consideration in any post-conviction remedy by the Petitioner
as the totality of the evidence should uphold the conviction
and sentence. Furthermore, that any evidence available now
that was not available then in 1995, was of no consequence.
While that may be the prosecutor's desire and original intent
for why he withhold material evidence, in advance technology,
every miniscule of evidence whether it be a DNA on a napkin,
on a button, a hair strand, etc. can break a case wide open in
today's world. If we as a society are to respect and obey the
constitutional rights of an accused, no amount of cure is
available when those rights are violated unless they are properly
applied in any criminal case. One [**RIGHT**] the Petitioner was
afforded by the constitution was the "**PRESUMPTION OF INNOCENCE**".
But in this instant case, the Petitioner, with a huge public
outcry for justice, was [**GUILTY AND NEEDED TO PROVE HER
INNOCENCE**]. It was a travesty of justice. In addition, not
withholding exculpatory material evidence was yet another
[**RIGHT**] practiced against the Petitioner.

The Petitioner urges this Honorable Court to review the
following grave misdeeds that played into the conviction of the
Petitioner.

(1) The Court of Appeals "OPINIONED" that the "...
Appellant shot Complainant, Selena Quintanilla Perez,
in the back as Complainant walked toward the door of
Appellant's room". This indicates that the shooting
occurred inside, not outside. This is why the
importance of the shoes matter;

(2) The prosecutor, Mr. Valdez, presented evidence of the
trail of blood he states the victim left behind as
she ran 130 yards (390 feet) from the room to the
front lobby of the motel; (See **EXHIBIT B – A photo
of the path he says the victim "RAN"**)

(3) The prosecutor, Mr. Valdez, in his published book,
"JUSTICE FOR SELENA" states that a HOLLOW POINT BULLET
[BULLETS THAT WERE PRESENTED AS EVIDENCE IN THIS
INSTANT CASE] are used to "**STOP AN AGGRESSOR**". If
this is the case, it didn't stop the victim as she
"RAN". This is why it is and was important for the
upper clothing of the victim to be submitted to the
medical examiner's for his evaluation. It was not;

(4) The "WITHHOLDING" of the victim's shoes (i.e. White
Reebok Tennis Shoes) are of a great consequence
because if it is as Mr. Valdez claimed in his March
16, 2018 interview that the Petitioner "STEPPED" on
victim's blood as she followed the victim, then
"INTENT" would have been proven or disproven. For
23 years, the jury nor the defense knew that such
shoes existed;

(5) In his media interview, (paraphrasing Mr. Valdez)
claimed that the "**EXERTION**", POST RIGHT PERFORATED
SUBCLAVIAN ARTERY INJURY, that the victim exhibited
while running is what killed the victim. Had the
"tennis shoes" been presented as evidence, they could
have proven the extend of the victim's blood loss as
an artery injury would have produced an enormous
amounts of blood profusing out of the victim into
her shoes. The jury never got to deliberate this
crucial evidence;

(6) The Petitioner's defense was one of an accident.
The Court of Appeals adds credance to this defense
when it stated in its "OPINION" that the victim was
"SHOT...COMPLAINANT WALKED TOWARD THE DOOR OF THE
...ROOM". The State presented no witnesses who
witness the Pettioner "INTENTIONALLY" shooting the
victim inside the room;

(7) By withholding the "tennis shoes" from the jury, it
lends to the suspicion that the "UPPER CLOTHING OF
THE VICTIM" (i.e. green sweat shirt) crucial to the
determination of the distance, direction, size and
type of bullet that struck the victim was delibertately
destroyed;

(8) Rosario Garza, a State witness, gave a police statement
stating that she heard "2 GUN SHOTS". This witness
was **NOT** called to testify at trial;

(9)    The weapon that was introduced at trial, was tested
       in the lab to have been fired only **ONCE**;
(10)   No fingerprints were lifted from the weapon;
(11)   No one examined the Petitioner's hands for gun powder;
(12)   No bullet or casings were found at the crime scene,
       inside or outside of the room, even though the victim
       had an entrance and exit wound;
(13)   In 2000, the prosecutor, Mr. Valdez, requested and
       was granted permission to "**DESTROY**" the weapon
       introduced at trial despite Petitioner's urging not
       to do so as she had pending appeals;
(14)   The prosecutor, Mr. Valdez, had the "tennis shoes"
       yet sought not to destroy them; and
(15)   The prosecutor, Mr. Valdez, used the motive of
       embezzlement, fruit of the poisonous tree, to convict
       the Petitioner even after he stated to the Court he
       had no intention of pursuing charges against the
       Petitioner for lack of evidence.

The Petitioner, finally, argues that since the Court of
Appeals ruled in this instant case that the "**IMPEACHMENT EVIDENCE**"
that the Petitioner was entitled to, begs the question:  Why
would the **EXCULPATORY MATERIAL EVIDENCE** not be entitled to the
Petitioner?  If the shoes were so important to the crime that
(a) Mr. Valdez, the prosecutor, withheld them for 23 years,
(b) that he chose not to destroy them like he sought to destroy
the weapon, and (c) at will he chose to present them to the
public, NOT THE JURY, then it is just as important that the
Petitioner be given the opportunity to refute such evidence.
The Petitioner claims the prosecutor, Mr. Valdez, was a self-
serving prosecutor who withheld evidence and breached its
affirmative duty to disclose impeachment evidence at first.
But now, its evident that he withheld exculpatory material evidence
crucial to the defense of the Petitioner.  Prosecutors with such
behaviors should be deterred from wrongdoing again against another
defendant.

The Petitioner informs this Honorable Court that after many requests to the State convicting court to obtain her trial record, the court was uncooperative in this matter as Petitioner's repeated requests were unanswered. The Petitioner was forced to file a Writ of Mandamus to the Court of Criminal Appeals in 2012. After an order from the Court of Criminal Appeals, the convicting court provided the Petitioner with [SOME] but not all of her record. To obtain the rest of her trial record, a second Writ of Mandamus had to be filed in 2018 to obtain an answer as to the whereabouts of the rest of her trial record. Again the Court of Criminal Appeals filed an order and the convicting court responded. For this reason, the Petitioner has delayed in filing this petition.

## CONCLUSION AND PRAYER

WHEREFORE, the Petitioner prays that this Honorable Court will grant her motion and review this instant case.

Respectfully Submitted,

*Yolanda Saldivar*

Yolanda Saldivar

TDCJ #733126

Mountain View Unit

2305 Ransom Rd.

Gatesville, Texas 76528

## CERTIFICATE OF SERVICE

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been sent via regular mail through the "TDCJ" mailing system to the United States District Court, Western District, Waco Division, 800 Franklin Ave., Room 380, Waco, Texas 76701 on 25 day of March , 2019.

*Yolanda Saldivar*

PETITIONER

**E X H I B I T          A**





Carlos Valdez
Fiscal del caso Selena



Esto es sangre



**E  X  H  I  B  I  T                    B**



